UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-cv-00114-BJB-LLK

**EMILY M.**            **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**          **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. [Doc. 1]. Plaintiff's memorandum in support is at Doc. 19-1, and Defendant's response in opposition is at Doc. 23. The Court referred the matter to the undersigned Magistrate Judge for "consideration and the preparation of a Report and Recommendation according to 28 U.S.C. § 636(b)(1)(B)." [Doc. 14].

Plaintiff makes two arguments:

1. The ALJ's [Administrative Law Judge's] unexplained determination that Plaintiff's severe migraine impairment did not meet Listing 11.02 fails to comply with controlling law and is not supported by substantial evidence.

2. The ALJ improperly evaluated the opinion of treating neurologist Dr. Siva and by doing so formulated an RFC [residual functional capacity] that is not supported by substantial evidence.

[Doc. 19-1 at PageID.2038].

Because the arguments are unpersuasive and the Commissioner's final decision is supported by substantial evidence, the RECOMMENDATION will be that the Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

## The ALJ's decision

On December 6, 2016, at age 29, Plaintiff underwent brain tumor surgery. [Administrative Record, Doc. 13 at 34, 41-42]. The ALJ recognized that, on December 18, 2017 (a year after surgery), Plaintiff reported ongoing migraine headaches. *Id.* at 38, 1431.

Plaintiff originally filed claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging an onset of disability on December 6, 2016, but she later voluntarily dismissed her DIB claim (consistent with the ALJ's ultimate finding [Doc. 13 at 41] that Plaintiff has no past relevant work) and modified her alleged onset date to April 3, 2018, when she filed her SSI claim (as there is no entitlement to SSI benefits prior to the application date).

The ALJ found that Plaintiff was not disabled from April 3, 2018 through October 18, 2019, when the ALJ issued her decision. *Id.* at 34, 42-43, 83.

The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 3, 2018. *Id.* at 34, 42-43, 83.

Second, the ALJ found that Plaintiff has the following severe, or vocationally significant impairments: brain tumor, headaches, gastroesophageal reflux disease, and obesity. *Id.* at 34.

Third, the ALJ found that Plaintiff does not have an impairment that satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 36.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). The ALJ found that, notwithstanding her impairments, Plaintiff can:

> … perform light work as defined in 20 CFR … 416.967(b) except the claimant could lift or carry up to twenty occasionally, ten pounds frequently … could sit, stand, or walk for thirty minutes at a time, for a total six hours each, in an eight-hour day, with normal breaks … could never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and occasionally stoop, kneel, crouch, and crawl … should avoid concentrated exposure to vibrations … could never be exposed to unprotected heights, dangerous machinery, extreme heat, cold, humidity, fumes, odors, dusts, gases, and poor ventilation.

[Doc. 13 at 37].

Fourth, the ALJ found that Plaintiff has no past relevant work. *Id.* at 41.

Fifth, the ALJ concluded that Plaintiff is not disabled, finding that she retains the ability to perform a significant number of unskilled, light jobs in the national economy such as inspector/hand packager, shipping/receiving weigher, products assembler/plastic. *Id.* at 42.

On March 30, 2021, the ALJ's decision became the Commissioner's final decision, subject to judicial review, when the Appeals Council adopted the ALJ's findings and conclusions. *Id.* at 4.

## Standard of review

In the Social Security context, the question for the reviewing court is whether the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Court "will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court "may not try the case de novo nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y*, 964 F.2d 524, 528 (6th Cir. 1992) (quotation omitted). And the Court is not empowered to reweigh the evidence. *Price v. Comm'r*, 342 F. App'x 172, 174 (6th Cir. 2009).

## Plaintiff's first argument is unpersuasive.

First, Plaintiff argues that "[t]he ALJ's unexplained determination that Plaintiff's severe migraine impairment did not meet Listing 11.02 fails to comply with controlling law and is not supported by substantial evidence." [Doc. 19-1 at PageID.2046-48].

As noted above, the ALJ found that Plaintiff suffers from severe, or vocationally significant, headaches. [Doc. 13 at 34]. The parties agree that evaluation of Plaintiff's headaches is governed by Social Security Ruling (SSR) 19-4p, 2019 WL 4169635) ("Evaluating Cases Involving Primary Headache Disorders") (Aug. 26, 2019). [Doc. 19-1 at PageID.2046, Doc. 23 at PageID.2064].

3

Pertinent to Plaintiff's first argument, SSR 19-4p provides that:

Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.

2019 WL 4169635, at *7.

Consistently with SSR 19-4p, the ALJ found that:

Migraines cannot meet a listing in appendix 1 because it is not a listed impairment. At this step, therefore, it must be determined whether it medically equals a listing. Listing 11.02 [B and D] is the most closely analogous listed impairment. However, the evidence fails to demonstrate that the claimant's migraines medically equal a listing.

[Doc. 13 at 37].

Listing 11.02(B) and (D) require that the impairment persist "despite adherence to prescribed treatment":

11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
…
B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) **despite adherence to prescribed treatment (see 11.00C)**; or
…
D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) **despite adherence to prescribed treatment (see 11.00C)**; and a marked limitation in one of the following:

    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.02(B) and (D) (emphasis added). "Despite adherence to prescribed treatment" means that "you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." 11.00C.

4

In June 2019, Plaintiff's treating neurologist, Niranjan Siva, M.D., completed the Headaches Medical Source Statement. [Doc. 13 at 1898-1901]. Dr. Siva's diagnosis was "nonintractable episodic headache." *Id*. at 1898. "The Merriam-Webster dictionary defines the word "intractable," as relevant to this case, as "not easily relieved or cured." *Motley v. Comm'r*, No. CIV-17-1251-R, 2018 WL 3733675, at *3 (W.D. Okla. July 12, 2018) (report adopted). "The inclusion of the prefix 'non' before the word 'intractable' would appear to indicate that Plaintiff's migraines are not intractable, and that they are in fact susceptible to treatment." *Id.*

When asked "Has your patient taken medications or followed other prescribed treatment for at least three consecutive months?" Dr. Siva responded "Yes." [Doc. 13 at 1900]. When asked to "Describe the treatment and response," Dr. Siva responded "Keppra, Trileptal, Topamax, patient was scared to take these medications." *Id.*

The claimant bears the burden of showing that her migraine headaches meet or medically equal the Listing. *O'Brien v. Comm'r*, 819 F. App'x 409, 414-15 (6th Cir. 2020). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to **all** the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis original). Plaintiff presented no such medical findings. Specifically, while Plaintiff presented findings from Dr. Siva, they did not satisfy the criterion of "adherence to prescribed treatment." Listing 11.02(B) and (D).

Admittedly, in completing the Headaches Medical Source Statement, Dr. Siva found that Plaintiff has "taken medications or followed other prescribed treatment for at least three consecutive months," [Doc. 13 at 1900], and this finding corresponds almost verbatim to the definition of "adherence to prescribed treatment" at 11.00C. Nevertheless, Dr. Siva's finding was equivocal in light of her diagnosis of "nonintractable" migraine headaches. [Doc. 13 at 1898]. Additionally, as the ALJ noted, Dr. Siva "remarked that the claimant was scared to take Trileptal and Topamax," which made it "unclear to what

5

extent the claimant tried any of these medications and whether these medications were or were not beneficial." *Id.* at 40, 1579-83, 1900. Plaintiff testified that she was terrified to take Botox and that Fioricet kept her up at night. [61, 63]. The ALJ found that "the records suggested that the claimant has not taken any of the prescribed controlling headache medications for very long." *Id.* at 39.

### Plaintiff's second argument is unpersuasive.

Second, Plaintiff argues that "[t]he ALJ improperly evaluated the opinion of treating neurologist Dr. Siva and by doing so formulated an RFC that is not supported by substantial evidence." [Doc. 19-1 at PageID.2049-54]. Specifically, Plaintiff argues that the ALJ's RFC determination is unsupported in light of Dr. Siva's completion of the Headaches Medical Source Statement [Doc. 13 at 1898-1901].

SSR 19-14p provides, in pertinent part, that:

9. How do we consider an MDI [medically determinable impairment] of a primary headache disorder in assessing a person's residual functional capacity?

If a person's primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, we assess the person's residual functional capacity (RFC). We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC. The RFC is the most a person can do despite his or her limitation(s).

We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.

2019 WL 4169635, at *7-8.

The parties agree that, because Plaintiff filed for disability claim on April 3, 2018 [Doc. 13 at 32], the new rules for weighing medical opinions apply. See 20 C.F.R. § 416.920c ("For claims filed ... on or after March 27, 2017, the rules in this section apply."). Under the new rules, the Commissioner (ALJ) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). The ALJ need only explain how he considered the supportability and consistency

factors, which are the two most important in determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1). The more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 416.920c(c)(2). The ALJ may, but is not required to, explain how the ALJ considered the factors in paragraphs (c)(3) through (c)(5). 20 C.F.R. § 416.920c(b)(2)-(3).

The ALJ found the disabling medical opinions contained in Dr. Siva's Headaches Medical Source Statement to be "not persuasive" for the following reasons:

> Niranjan Siva, M.D., at Mercy Neurology, provided an opinion in June 2019. She reported treating the claimant since November 2017. The doctor opined that the claimant would likely have good and bad days. The doctor opined that the claimant would miss more than four days of work per month. The doctor also opined that the claimant was unable to work at this time. The doctor's opinions are not fully consistent with or supported by the evidence. In particular, the opinion appeared to contain statements that are self-reports of the claimant, and not backed up by any objective medical evidence. The doctor also remarked that the claimant was scared to take Trileptal and Tompamax; however, this statement was not clarified. It is unclear to what extent the claimant tried any of these medications and whether these medications were or were not beneficial. As to Dr. Siva's opinion that the claimant is disabled, whether an individual is disabled is reserved to the Commissioner. Considering Dr. Siva's opinions the undersigned noted that the opinions were not well supported or fully consistent with the evidence and, as such, the opinion was not persuasive.

[Doc. 13 at 40]. These reasons comported with the standards discussed in the preceding paragraph.

Even under the old rules for weighing medical opinions, which are generally regarded as more favorable to plaintiffs, the ALJ was not bound by Dr. Siva's disabling medical opinions. *See Morales v. Comm'r*, No. 1:13-CV-1061, 2015 WL 1478196, at *7 (W.D. Mich. Mar. 31, 2015) (finding no violation of former "treating physician" rule where ALJ found that the "underlying treatment records did not reflect migraine headaches that were of an intensity or of a frequency that they would be work preclusive" for twelve consecutive months).

Finally, Plaintiff argues that the ALJ's RFC finding is deficient in light of Dr. Siva's Statement [Doc. 13 at 1899, 1901] that "bright lights," "looking at a screen (TV, computer, etc.)," and "noise" can trigger Plaintiff's headaches. The argument is unpersuasive for two reasons. First, ALJs routinely find that migraine headaches are not disabling notwithstanding RFCs that acknowledge a need to avoid bright lights, screens, and noise. *See e.g. Nikki L. v. Comm'r*, No. 3:20-CV-934 (ATB), 2021 WL 4066530, at *3 (N.D.N.Y. Sept. 7, 2021), *Sarah B. v. Comm'r*, No. 4:19 CV 1761 JMB, 2020 WL 3172466, at *11 (E.D. Mo. June 15, 2020). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Comm'r*, 167 F. App'x 496, 507 (6th Cir. 2006). Second, the appropriate time to probe alleged deficiencies in the ALJ's RFC finding and the controlling vocational hypothetical was "at the ALJ hearing," not for the first time on judicial review. *Kepke v. Comm'r*, 636 F. App'x 625, 636 (6th Cir. 2016).

In summary, Plaintiff's second and final argument is that the ALJ's RFC determination is not supported by substantial evidence. [Doc. 19-1 at PageID.2049-54]. An ALJ's determination of a claimant's RFC is "reserved to the Commissioner," based on the medical and nonmedical evidence as a whole, including "medical statements," "report of daily activities," and "effects of symptoms, including pain." Social Security Ruling (SSR), 96-8p, 1996 WL 374184, at *5. "No bright-line rule exists in [this] circuit directing that medical opinions must be the building blocks of the residual functional capacity finding." *Tucker v. Comm'r*, 775 F. App'x 220, 226 (6th Cir. 2019). Admittedly, substantial evidence would have supported a more Plaintiff-favorable determination of Plaintiff's RFC. However, the substantial-evidence standard presupposes that there is a "zone of choice" within which the decisionmakers can go either way, without interference by the courts. *Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009). It is sufficient, for judicial review purposes, that the ALJ's RFC determination is supported by substantial evidence.

**RECOMMENDATION**

Because Plaintiff's arguments are unpersuasive and the ALJ's decision is supported by substantial evidence, the Magistrate Judge RECOMMENDS that the Court AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

June 16, 2022

Lanny King, Magistrate Judge
United States District Court

**NOTICE**

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984).

June 16, 2022

Lanny King, Magistrate Judge
United States District Court