UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**EMILY M.**                                                                                    **PLAINTIFF**

**v.**                                                                            **No. 5:21-cv-114-BJB-LLK**

**COMMISSIONER OF SOCIAL SECURITY**                                                   **DEFENDANT**

\*\*\*\*\*

**MEMORANDUM OPINION & ORDER**

Emily M.[1] filed this lawsuit challenging the Social Security Commissioner's decision to deny her application for disability benefits. The Court referred this case to Magistrate Judge Lanny King "for consideration and the preparation of a Report and Recommendation." DN 14. Judge King proposed factual findings and recommended that the Court affirm the Commissioner's final decision and dismiss the complaint. Report and Recommendation (DN 24). The Claimant timely objected. DN 25. After carefully considering those objections and the applicable law, the Court declines to adopt the proposed disposition. Instead, the Court remands this case for an appropriate step-three evaluation consistent with statutory and regulatory requirements under 5 U.S.C. § 557(c) and 20 C.F.R. § 416.920(a)(4)(iii).

**I.**

The Report and Recommendation fully details the factual record. Emily M. filed an application for Supplemental Security Income and Disability Insurance Benefits, claiming a disability beginning on December 6, 2016. Administrative Record (DN 13) at 38. The state agency twice denied the application: once following her first submission and again following reconsideration. *Id.*

Emily M. then requested a hearing before an Administrative Law Judge, who applied the prescribed five-step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); 20 C.F.R. § 416.920(a)(4)(i)–(v). The ALJ found (1) Emily M. had not engaged in substantial gainful activity; (2) had several severe impairments including a brain tumor, headaches, gastroesophageal reflux disease, and obesity; (3) which neither met, nor medically equaled, the severity of any listed impairment. *Id.* at 40–42. As to the residual-functional capacity assessment, relevant to the fourth and fifth steps, Emily M. had the "RFC" to perform "light work" with some exceptions. *Id.* at 43. The ALJ further found that (4) Emily M. had no past relevant work and (5) was capable of "making a successful adjustment to other work that exists in

---

[1] Consistent with General Order 22-05, this Order refers to the Plaintiff/Claimant in this case solely by her first name and last initial.

1

significant numbers in the national economy." *Id*. at 47–48. So the ALJ concluded that Emily M. had not been disabled, as defined in the Social Security Act, during the relevant time period. *Id*. at 49. Emily M. appealed to the Appeals Council, which agreed with the ALJ's findings and upheld her decision. *Id*. at 10–13.

So Emily M. filed this complaint, appealing the Commissioner's decision denying her benefits. Complaint (DN 1) ¶ 1. First, she challenged the ALJ's findings at step 3. Plaintiff's Fact and Law Summary (DN 19) at 1. She asserted that the ALJ's "determination that [Emily M.'s] severe migraine impairment did not meet Listing 11.02" is "unexplained," and therefore "fails to comply with controlling law," and "is not supported by substantial evidence." Plaintiff's Memorandum of Law in Support of a Social Security Appeal (DN 19-1) at 1. Second, she challenged the ALJ's findings at steps 4 and 5, asserting that the ALJ's residual-functional capacity determination "is not supported by substantial evidence" because "the opinion of treating neurologist Dr. Siva" was "improperly evaluated." *Id*. at 1.

The Magistrate Judge considered the administrative record, concluded that substantial evidence supported the Commissioner's decision, and recommended affirming it. Report and Recommendations at 1. Emily M. objected, characterizing her argument as "not … simply substantial evidence but that the ALJ has not complied with controlling law." Objections to Report and Recommendation (DN 25) at 3.

## II.

When a party properly objects to a magistrate judge's report and recommendation, the district judge must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). To satisfy this duty, the Court decides whether the ALJ's decision was "supported by substantial evidence" and was "made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g)).

This threshold for evidentiary sufficiency is not high. The Sixth Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citation omitted). This means "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). And the scope of the Court's review "must be based on the record as a whole." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). So in deciding whether substantial evidence in the record supports the ALJ's decision, we "may look to any evidence in the record, regardless of whether it has been cited" by the ALJ. *Id*.

But even if supported by substantial evidence, the Court may not uphold a decision of an administrator who "fails to follow its own regulations and where that

error prejudices a claimant on the merits." *Bowen*, 478 F.3d at 746. So "an ALJ must include a discussion of 'findings and conclusions, and the reasons or basis therefor[e], on all the material issues of fact, law, or discretion presented on the record.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 5 U.S.C. § 557(c)(3)(A)). The Court therefore will affirm the ALJ's decision unless it prejudiced the Claimant on the merits by either "fail[ing] to apply the correct legal standards" or "ma[king] findings of fact unsupported by substantial evidence." *Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007) (quotations omitted).

### III.

The Social Security Act entitles individuals to Supplemental Security Income if they are disabled as the law defines that term. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. That is, if she is unable to engage in "any substantial gainful activity" due to a "medically determinable … impairment" that meets the duration requirement. 20 C.F.R. § 416.905; *see also* § 416.909 (impairment must be expected to result in death or continue at least 12 months). The impairment must also be severe: rendering the claimant unable to do "*any* other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a) (emphasis added). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.922. Claimants bear the burden of proving a disability with supporting evidence. 20 C.F.R. § 416.912(a)(1). And the ALJ undertakes a five-step analysis, set out in the regulations, to evaluate a disability claim. 20 C.F.R. §416.920.

As to step three, the R&R Objections argue the ALJ undertook "no evaluation of the medical evidence whatsoever" before finding that Emily M.'s migraine headaches did not medically equal Listing 11.02. Objections at 2. Given the conclusion that headaches constituted a severe impairment by "significantly limit[ing]" Emily M.'s ability to do basic work activities for the requisite length of time, Record at 40, the question became whether the headaches met or equaled one of the conditions listed in the regulation (specifically, 20 C.F.R. Pt. 404, Subpart P, App'x 1). Because headaches aren't among the listed impairments, the ALJ's job was to determine whether Emily M.'s headaches *met* or *equaled* in duration and severity another listed impairment: epilepsy. Administrative Record at 43. Listed at 11.02, epilepsy is "the most closely analogous listed impairment" for headaches. Social Security Ruling, SSR 19-4p; Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635, at *7 (Aug. 26, 2019). Claimants with headache disorders "may exhibit equivalent signs and limitations to those detailed in listing 11.02." *Id.*

The ALJ determination stated only that "[t]he evidence fails to demonstrate that the claimant's migraines medically equal a listing." Record at 43; *Burbridge v. Comm'r of Soc. Sec.*, 572 F. App'x 412, 415 (6th Cir. 2014).

Affording appropriate deference to ALJ determinations, was that enough to show the decision was "made pursuant to proper legal standards"? *Rogers*, 486 F.3d at 241. The Sixth Circuit has interpreted the third step to require ALJs to "actually evaluate the evidence, compare it to the requirements of the relevant listing, and provide an *explained conclusion*, in order to facilitate meaningful judicial review." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. 2020) (emphasis added) (internal quotations omitted) (quoting *Reynolds,* 424 F. App'x at 416); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) ("ALJ should *discuss* the relevant listing … where the record raises 'a substantial question as to whether the claimant could qualify as disabled' under a listing") (emphasis added and alteration omitted) (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)).

To engage in the sort of reasoned and reviewable decisionmaking familiar to administrative law, the ALJ must provide reasons "both to ensure adequacy of review and to enable the claimant to understand the disposition of h[er] case." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751 (6th Cir. 2011). Claimants are entitled, under Sixth Circuit precedent, to know how the ALJ applied the criteria for the listed condition (here, epilepsy) to the evidence that established a severe impairment for the unlisted condition (headaches). *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 665 (6th Cir. 2009) (Holschuh, D.J., concurring in part). Only by showing its work can the courts and claimants alike evaluate whether the ALJ applied standards appropriately and evaluated evidence adequately.

Here the Court lacks the record citations and reasoned explanation necessary to determine whether the ALJ discharged her "duty to consider the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). No logic connects the step-two and step-three conclusions. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). So the Court cannot affirm the ALJ's step-three decision as supported by substantial evidence. *Reynolds*, 424 F. App'x 411 at 416.

To be sure, the ALJ's opinion did address facts and evidence about Emily M.'s migraines. But it never explained why that condition did or didn't align with the listed epilepsy criteria. Instead, the opinion largely addressed that evidence in connection with the RFC and step-four sections, without linking those considerations to the step-three conclusion the complaint criticizes. *See* Administrative Record at 43–47. Put another way, the ALJ did not consider RFC when evaluating the equivalency of headaches and epilepsy, and did not consider equivalency when assessing RFC. Nor are the considerations identical: absent any discussion of the claimant's adherence to treatment and her symptoms' duration and frequency, the ALJ opinion doesn't make clear why these headaches weren't equivalent to the listed

impairment, which implicates two different sets of criteria.[2]   Therefore any discussion in part four does not supply the substantial evidence necessary to support the ALJ's step-three decision.

The Report and Recommendation offers a far better explanation for the ALJ's ruling than the ALJ herself. As the Claimant recognized, "[h]ad the ALJ undergone the same analysis that the Magistrate Judge [did] in his written report, Plaintiff would not be asserting the same legal error that she is." Objections at 2. "[C]learly," however, "the ALJ did not." *Id*. The R&R concluded (not entirely unreasonably, in light of the deference owed agency proceedings) that the ALJ must've reasoned that the conditions weren't equivalent because the treating physician diagnosed the Claimant with a "nonintractable episodic headache." Report and Recommendation at 5. The Magistrate Judge defined that condition as "not easily relieved or cured," and then went on to infer that the ALJ must've determined the headaches were "susceptible to treatment." *Id*. Finally, the R&R concluded that "Plaintiff presented no … medical findings" that showed adherence to treatment (based on evidence that the claimant was "scared to take th[e] [relevant] medication"). *Id*. But as the Claimant's brief notes, neither the Magistrate Judge nor the Claimant knows what the ALJ reasoned, or why—precisely because the ALJ didn't say.

Relying on *Price v. Heckler*, the Commissioner defends the ALJ's reasoning and explanation as sound. *See* Commissioner's Fact and Law Summary (DN 23) at 5 (step three requires "minimal articulation"). But *Price* dealt with whether the ALJ's conclusions were sufficiently supported by the facts, not whether the ALJ comported with the legal requirements in articulating its conclusions. *See Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (whether claimant met strict standard for widow's benefits is "a close question"). In any case, the *Price* Court acknowledged that "the ALJ's findings of fact could have been stated with more particularity," yet decided that the evidence in the record didn't render its factual findings unsupported by substantial evidence. *Id*. Since then, the Sixth Circuit has held that "to facilitate meaningful judicial review" requires ALJs at the third step to "actually evaluate the evidence, compare it to the requirements of the relevant listing, and provide an *explained conclusion*[.]" *Nash*, 2020 WL 6882255, at *3 (emphasis added) (internal quotations omitted) (quoting *Reynolds*, 424 F. App'x 411 at 416).

The issue before this Court, therefore, is not whether the ALJ's one-sentence conclusion on a material question of fact is factually correct, but whether the ALJ's

---

[2] The severity and duration of migraines may be compared, under the applicable Social Security Rulings ("SSRs"), to different sets of criteria located in two different paragraphs: Paragraph B of Listing 11.02 for dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment, or Paragraph D of Listing 11.02 for dyscognitive seizures occurring (in addition to another marked limitation) at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment. *See* SSR 19-4p; Titles II and XVI: *Evaluating Cases Involving Primary Headache Disorders*, 84 Fed. Reg. 44667, 44671 (Aug. 26, 2019).

conclusion satisfied the *legal requirement* of setting forth an administrative record that permits meaningful judicial review of the ALJ's work. So *Price* is inapposite. *See, e.g.*, *McDaniel v. Comm'r of Soc. Sec. Admin.*, No. 3:14-cv-551, 2015 WL 458065, at *10 (N.D. Ohio Feb. 3, 2015); *Risner v. Comm'r of Soc. Sec.*, No. 1:11-cv-36, 2012 WL 893882, at *3 (S.D. Ohio Mar. 15, 2012) (*Price* irrelevant to judicial review of step three). The Court cannot conclude on this record that the ALJ opinion sufficiently explained its conclusion in a manner that allows for meaningful review of that determination. *See Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019); *Jandt v. Saul*, No. 1:20-cv-45, 2021 WL 467200, at *10 (W.D. Ky. Feb. 9, 2021) (reversing denial of benefits and remanding because ALJ failed to provide "a sufficient explanation for the Court to determine the basis for his unfavorable finding about medical equivalence at step three"). As noted in another district court, "[i]t is no surprise that an ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches was found to be a severe impairment at step two." *Edwards v. Colvin*, No. 3:14-cv-5338, 2014 WL 7156846, at *3 (W.D. Wash. Sept. 15, 2014); *see also Phillip v. Saul*, No. 8:19-cv-422, 2020 WL 4001162, at *25 (D. Neb. July 15, 2020) (cataloguing decisions finding reversible error based on ALJ failure to sufficiently explain conclusions about medical equivalence between headaches and listing 11.02.).

## IV.

In view of this error, courts must account for the impact, if any, of the perceived error in reviewing administrative decisionmaking. So before concluding that the ALJ's insufficient step-three analysis constitutes reversible error, the Court must "revie[w]" this decision of the "administrative agenc[y] for harmless error." *Rabbers*, 582 F.3d at 654. That is, the record must raise a substantial question regarding whether the claimant's unlisted severe impairment could equal in duration and severity its most analogous listed impairment. *See Pasiak*, 800 F. App'x at 304. The Commissioner contends Emily M. hasn't provided evidence that her migraines satisfy "each and every part of" Listing 11.02 D. Commissioner's Law and Fact Summary at 4. The claimant bears the burden of production on this point, as well: she needs to point to specific medical evidence demonstrating that she meets or equals every listing requirement. *See Smith-Johnson*, 579 F. App'x at 432. If Emily M. has successfully discharged that burden, however, then the "ALJs failure to discuss that listing would constitute reversible error." *Pasiak*, 800 F. App'x at 304 (citing *Reynolds*, 424 F. App'x at 416) (ALJ's cursory step-three analysis of severe impairment constituted reversible error because claimant pointed to evidence that possibly could meet listing).

The R&R did *not* expressly conclude the error identified by the Claimant was harmless even if it was proved. And indeed the error identified above is not harmless: here Emily M. has pointed to evidence in the record that is sufficient to raise a substantial question regarding whether her headache disorder equals the epilepsy listing at § 11.02. Courts have ruled that evidence showing a claimant's severe migraines occur at least once per week for three consecutive months, despite

6

adherence to prescribed treatment, sufficiently establishes equivalency to Listing 11.02B. *See, e.g., Jandt*, 2021 WL 467200, at *8; *Fortner v. Saul*, No. 9:19-cv-76, 2020 WL 532969, at *3 (D.S.C. Jan. 15, 2020), *report and recommendation adopted*, No. 9:19-cv-76, 2020 WL 528174 (D.S.C. Feb. 3, 2020) ("[M]igraine impairment can be functionally equivalent to this Listing where severe headaches or migraines occur at least once per week for three consecutive months despite adherence to prescribed treatment.").

The Claimant's submission supports that. An MRI of her cervical spine, read by Dr. Derek Savelle, indicates that the lesion on the image was "quite hyperintense." Plaintiff's Fact and Law Summary at 3 (citing Record at 1489). Dr. Cox's report, dated January 4, 2018, states that Emily M. had a "left frontal craniotomy for tumor that was impairing mobility of [her] right arm and leg," which had "improved but continues with almost constant headache[s]." *Id*. at 11 (citing Record at 1456). She points to Dr. Siva's Headaches Medical Source Statement, dated June 10, 2019, stating that the patient's headaches occurred with the "approximate frequency of" 7 per week and 30 per month. *Id*. (citing Record at 1910); *see also* Record at 1421 (stating that Emily M. still experiences headaches, specifically "continuous daily headache since surgery around site of surgery" that get worse "with climbing steps" and "sensitivity to light and noise"). Last, she points to Dr. Siva's answer that she "has … taken medications or followed other prescribed treatments for the last three months." Plaintiff's Fact and Law Summary at 5 (citing Record at 1912). Those pieces of evidence are consistent with each requirement of the listing. So the Court cannot conclude that the error was harmless because the record as currently presented could, at least potentially, support a determination that Emily M. met or equaled the listing. And it's decidedly not the Court's job to "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quotations omitted).

The Commissioner points elsewhere in the record for evidence that allegedly demonstrates that the ALJ's step-three conclusion was substantially supported by evidence. That's difficult because (as noted above) the information the Commissioner cites in the opinion concerned different criteria used to reach conclusions on different points—and without logically connecting those conclusions back to the step-three criteria. So at least in this context, any conclusions drawn by the ALJ that weren't specifically tied to the step-three analysis do not readily support the otherwise conclusory step-three determination.

*****

The Court sustains the objection to the Report and Recommendation, reverses the ALJ's decision below, and remands the case for a new evaluation. This renders the challenge to the ALJ's "residual functional capacity" finding unnecessary to resolve at this stage.